## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GEORGE C. HEARD,

                Plaintiff,

    v.

CITY & COUNTY OF
PHILADELPHIA, et al.,

                Defendants.

Civil Action

No.  10-3448

### MEMORANDUM & ORDER

Pollak, J.                                          August 8, 2011

      Plaintiff George Heard was an inmate from June 2008 to approximately May 2009 at various facilities in the Philadelphia Prison System.  His complaint names sixteen defendants, including the City and County of Philadelphia; Prison Health Services, Inc., the provider of physical medical care in the Philadelphia Prison System; Dr. Bruce Herdman, Chief Medical Officer of the Philadelphia Prison System; Lou Giorla, Commissioner of the Philadelphia Prison System; and several other officials, including prison wardens, deputy wardens, correctional officers, and nurses.  *See* Docket No. 1. Plaintiff alleges seven claims against the defendants stemming from unsanitary prison conditions and inadequate medical care.  The claims include constitutional violations,

1

violations of federal statutes, the intentional infliction of emotional distress, and state law negligence.  Defendant Prison Health Services, Inc., now moves for partial summary judgment to dismiss count five of plaintiff's complaint, the state law negligence claim. *See* Docket No. 20.  For the reasons that follow, the court will grant the motion.

## I.    Background[1]

In June 2008, plaintiff was arrested and entered the Philadelphia Prison System (PPS).  During the course of approximately 11 months spent in PPS, plaintiff served time in four different facilities, all of which he claims were overcrowded and unsanitary, with "dirty, dust-filled air blowing 24 hours a day."  All but approximately 20 days of plaintiff's confinement were spent at one facility, the PPS House of Corrections.  For the purposes of the present motion, the most relevant facts are those that plaintiff alleges occurred while he was housed for one month in the Special Housing Unit of the House of Corrections.

On the night of July 16, 2008, plaintiff claims he had severe breathing problems and could not get out of bed.  He and another inmate attempted to get the attention of two corrections officers for more than an hour, but plaintiff claims they refused to help.  The next morning, plaintiff submitted a "sick call slip," in which he explained that his condition was urgent, but plaintiff was not called to the Medical Unit until sometime

---

[1] The information in this section is taken from the allegations in plaintiff's complaint, which are assumed to be true.  *See* Docket No. 1

"later in the day."  After listening to plaintiff explain his condition, defendant Nurse Jane

Doe #1 told plaintiff that "he was having a panic attack due to prison" and sent him back

to his cell without examining him.  Back in his cell, plaintiff complained again to a

corrections officer about not being able to breathe and was sent to the Medical Unit a

second time.  Nurse Jane Doe #2 examined plaintiff briefly, told him that he "had gas,"

gave him Pepto-Bismol, and sent him back to his cell.  Plaintiff again complained about

not being able to breathe and was sent to the Medical Unit a third time, where defendants

Nurse Jane Doe #1 and Nurse Jane Doe #2 threatened to "write him up" if he returned

again.  Plaintiff claims he went back and forth between his cell and the Medical Unit

three more times, until on his sixth visit to the Medical Unit, plaintiff saw a doctor who

determined that he was in need of immediate emergency care at a hospital.

Plaintiff was taken by ambulance first to Nazareth Hospital, where he suffered a

series of "mini-strokes."  Plaintiff was then immediately transferred to Albert Einstein

Hospital, where he underwent emergency lung surgery and had a portion of his lung

removed.  Plaintiff claims his diagnosis was a "bacterial staph infection and/or

Methicillin-Resistant Staphylococcus Aureus" ("MRSA").  He remained hospitalized for

a week before returning to jail.  After his return to the PPS House of Corrections, plaintiff

claims he was denied access to the Medical Unit and suffered in severe pain for his

remaining time in prison, approximately nine more months.

Plaintiff asserts generally that unsanitary prison conditions, irresponsible prison policies, and intentional or negligent misconduct by several officials led to and exacerbated his condition.  Among his seven specific claims, plaintiff brings a state law negligence claim—or, in this context, a medical malpractice claim—against various defendants, including a vicarious liability claim against Prison Health Services, Inc. ("PHS").  PHS was the contracted provider of physical medicine to inmates in the PPS for the relevant time period.  PHS Answer, Docket No. 8 ¶ 4.  Plaintiff alleges that PHS and its employees failed to comply with generally accepted medical standards of care in their medical treatment of him.  In its present motion, PHS argues that the state law negligence claim should be dismissed because plaintiff failed to file a Certificate of Merit as is required by the Pennsylvania Rules of Civil Procedure in professional malpractice actions.  *See* Docket No. 20.

## II.    Analysis

### A.    Certificate of Merit Rule

Pennsylvania Rule of Civil Procedure 1042.3 requires a certificate of merit (COM) to be filed "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard."  Pa. R. Civ. P. 1042.3(a).[2]  The COM must be

---

[2] Pennsylvania's certificate of merit requirement was adopted by the Pennsylvania Supreme Court in January 2003 in response to that court's concern regarding the number of malpractice cases being filed in Pennsylvania courts.  *See Womer v. Hilliker*, 908 A.2d 269, 275 (Pa. 2006).

signed by the plaintiff's attorney and filed within sixty days after the filing of the complaint.[3]  *Id.*  In a claim that sets out a vicarious liability theory, additional certificates must also be filed as to each licensed professional for whom the defendant (here, PHS) is alleged to be vicariously liable.  Pa. R. Civ. P. 1042.3(a)(2) note; *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 248 (E.D. Pa. 2008).  In Pennsylvania courts, if a plaintiff has failed to submit a certificate within the sixty-day time frame, the defendant can direct the prothonotary to enter a judgment of *non pros*.  Pa. R. Civ. P. 1042.6.  The plaintiff may then seek relief from the judgment of *non pros*, requesting that it either be struck or opened.  *See* Pa. R. Civ. P. 3051.

In federal district courts, the COM rule "is substantive state law that must be applied."  *Booker v. United States*, 366 F. App'x 425, 426 (3d Cir. 2010); *see also Stroud*, 546 F. Supp. 2d at 248 (noting that "[f]ederal courts in Pennsylvania have uniformly held that the [COM] requirement is a substantive rule of law that applies in professional liability actions proceeding in federal court"); *Scaramuzza v. Sciolla*, 345 F. Supp. 2d

---

[3] The certificate of merit must state that either: "(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim."  Pa. R. Civ. P. 1042.3(a)(1)–(3).

508, 510 (E.D. Pa. 2004) (applying "Pennsylvania certificate of merit rule . . . as controlling substantive law").

Thus, failure to submit a COM is a "possible ground for dismissal by the district court when properly presented to the court in a motion to dismiss" under Rule 12(b)(6). *McElwee Group, LLC v. Mun. Auth. of Elverson*, 476 F. Supp. 2d 472, 475 (E.D. Pa. 2007). Mirroring the entry of judgment *non pros* in Pennsylvania courts, federal courts will dismiss without prejudice actions where a COM has not been filed. *See Booker*, 366 F. App'x at 426; *see also Stroud*, 546 F. Supp. 2d at 249 (a "judgment of *non pros*, if entered, effectively constitutes a dismissal of the cause without prejudice"); *Scaramuzza*, 345 F. Supp. 2d at 511 (holding that the court can "dismiss plaintiff's complaint without prejudice for failure to file a certificate of merit").

Although full compliance with Rule 1042.3 is expected, the Pennsylvania Supreme Court has held that the rule is subject to certain equitable considerations to aid the substantially compliant litigant who has a "reasonable explanation or legitimate excuse" for noncompliance. *Womer v. Hilliker*, 908 A.2d 269, 280 (Pa. 2006). While equitable exceptions may apply to a plaintiff who commits a misstep in attempting to comply with the rule, such exceptions are not available to a plaintiff who fails entirely to even attempt to file a COM. *Id.* at 276-278. Thus, since *Womer*, state and federal courts have applied equitable considerations "in situations where the plaintiff has attempted but failed to meet the technical requirements of Rule 1042.3." *Booker*, 366 F. App'x at 428.

B.      <u>Effect of Certificate of Merit Rule on Plaintiff's Claim</u>

In his complaint filed on July 13, 2010, plaintiff makes a state law negligence

claim, stating that several defendants, including PHS, failed to comply with accepted

medical standards of care in their medical treatment of him.  More than a year later,

however, he has yet to submit a COM as required by Pennsylvania Rule of Civil

Procedure 1042.3.[4]  Moreover, it appears that plaintiff has made no attempt and taken no

action to comply with the rule, and therefore equitable considerations do not apply.  *See*

*Booker*, 366 F. App'x at 428 (explaining that *Womer* bars equitable considerations for

plaintiffs who make no attempt to comply with the COM rule).  Accordingly, plaintiff's

state law negligence claim will be dismissed without prejudice.

*      *      *      *

**AND NOW**, this __ day of August, 2011, upon consideration of the motion for

partial summary judgment to dismiss plaintiff's state law negligence claim brought by

Prison Health Services, Inc. (Docket No. 20), and for the reasons outlined in the above

memorandum, it is hereby **ORDERED** that the motion is **GRANTED** and plaintiff's

state law negligence claim (Count Five) is **DISMISSED WITHOUT PREJUDICE.**

BY THE COURT:

 /s/ Louis H. Pollak
Pollak, J.

---

[4] This is despite the fact that defendant's counsel provided notice to plaintiff's
counsel in a letter sent on June 14, 2011, stating that a COM had not been filed.